IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| TOBY W. BROWN, § | |
| SO 84068, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:17-cv-00096-M-BP |
| § | |
| KATHRYN CROWE, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants' Amended and Joint Rule 12(b)(6) Motion to Dismiss and Brief in Support (ECF No. 76) filed April 20, 2018, and Plaintiff's Response to the Motion (ECF No. 86) filed June 1, 2018. After considering the pleadings and the applicable law, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **GRANT** Defendants' Motion to Dismiss and dismiss Plaintiff's Amended Complaint (ECF No. 64) with prejudice and **DENY AS MOOT** Plaintiff's renewed Motion for Temporary Restraining Order (ECF No. 95).

BACKGROUND

This is a civil rights suit for alleged inadequate medical care filed by Plaintiff Toby Brown ("Brown"), an inmate confined in the Wichita County Jail in Wichita Falls, Texas. (ECF No. 1 at 1). The Defendants are Southwest Correctional Medical Group ("SCMG"), an entity that manages the provision of healthcare to inmates in the Wichita County Jail, and several nurses employed or formerly employed by SCMG.

Brown filed his original complaint (ECF No. 1) on July 6, 2017 and his Amended

Complaint (ECF No. 67) on February 23, 2018. Brown's complaints stem from a fall that he took in the jail's shower in October 2016 that reinjured his back and hip. (ECF No. 1 at 4). Apparently, Brown had a preexisting back and hip condition for which he had been seen in the emergency department of a hospital in Southaven, Mississippi in September 2016 prior to arriving at the Wichita County Jail. (*See* ECF No. 10 at 7-8). Against all defendants, Brown alleges deliberate indifference for denying him medical treatment (ECF No. 1 at 3). He claims that SCMG was negligent "of [his] medical need's [sic] and treatment's [sic] and follow ups." (ECF No. 67 at 3). Brown alleges that Nurses LaKendra, Jessica, Stephanie, and Kathryn ("Defendant Nurses") denied him medical treatment, which caused further damage to his hip, lower back, and spine. (ECF No. 76 at 4).

On July 24, 2017, the Court issued a questionnaire to Brown seeking clarification of the claims made in his original complaint. (ECF No. 8). In the questionnaire, the Court asked Brown to state all facts known to him establishing that the Defendant Nurses violated his civil rights or were deliberately indifferent to his medical needs. (*Id.*). The questionnaire further asked Brown to describe (1) the nature of his medical condition and injury for which he had been denied medical care, (2) who diagnosed or confirmed his medical condition or injury, (3) all treatment received for each condition or injury, and (4) all attempts to obtain medical attention and written requests for which medical care was refused. (*Id.*).

Brown responded to the questionnaire on August 3, 2017. (ECF No. 10). He stated that Nurse Kathryn provided subpar treatment bordering on malpractice and that she failed to submit his sick calls resulting in physical, emotional, and psychological harm. (*Id.* at 2). He also stated that he felt Nurse Kathryn intentionally delayed him access to proper medical treatments. (*Id.*). He stated that Nurse Jessica provided inadequate service by hindering his attempt to obtain assistive

2

devices and therapy, intentionally ignoring doctor's orders, and ignoring his complaints about the adverse effects of his medication. (*Id.* at 3). He stated that Nurse LeKendra failed to acknowledge his serious medical needs as evident in his medical records, failed to assist him after he fell in the shower, hindered his attempt to obtain a wheelchair, and administered incorrect medication. (*Id.* at 4). He stated that Nurse Stephanie administered incorrect medication and failed to submit his sick calls.

As for SCMG, he stated that SCMG employed the nurses who are the subject of his complaint, and he further complained about the timeliness of receiving assistive devices such as a back brace and leg brace, medical treatment such as an MRI, and an appointment with a neurologist. (*Id.* at 6). Brown described his medical condition as a lumbosacral radiculopathy, broken hip, and left leg swelling with loss of feeling. (*Id.* at 7). He also stated that SCMG had refused to provide him with a nerve conduction study. (*Id.*) He claims that he was first diagnosed with these conditions on September 7, 2016 at BMH Desoto Emergency Department ("BMH") by Brent A. Smoyer, PA-C. (*Id.* at 8). And ever since being transferred to Wichita County Jail, he claims he has not received any medical treatments, (*id.* at 9), even though he has made numerous sick calls and written requests for medical treatment. (*Id.* at 9–10).

On August 16, 2017, the Court issued its second questionnaire seeking more specific information related to Brown's conditions, the assistive devices prescribed, and when he received such prescribed assistive devices. (ECF No. 11). Brown responded to the questionnaire on August 23, 2017. (ECF No. 12). He stated his specific condition as lumbosacral radiculopathy with L5-S1 nerve root inflammation, which was diagnosed at BMH by Dr. Oliver and Brent Smoyer, PA-C. (*Id.*at 3). He also stated he was prescribed a neurology consultation, physical therapy, and medication, but that he had not received any of these medical treatments even though he was still

3

in immense pain. (*Id.* at 3–4). He further stated that his condition and prescribed treatment were documented in his medical file from BMH, United Regional Hospital, and Neurology Center of Wichita Falls. (*Id.* at 4).

More specifically, Brown described the harm suffered as a direct result of Defendants' alleged deliberate indifference accompanied by a timeline for when assistive devices were provided to him. He claimed he has suffered foot drop and leg swelling, hip pain, lower back pain, loss of a testicle, and nerve damage, as a result of Defendants' deliberate indifference. (*Id.* at 4). Further, Brown stated that his conditions were caused by Defendants' (1) unwillingness to provide assistive devices—medical shoes or foot brace, shower chair, back brace and wheelchair; (2) medical negligence; and (3) unwillingness to send him to a neurologist. (*Id.*). The Court notes that Brown's reference to "loss of testicle" was mentioned only one time in this questionnaire. Nowhere else does Brown refer to this particular injury in any of his complaints or other questionnaires, nor is it referred to in any of Brown's medical records. Next, Brown outlined when assistive devices were requested, prescribed, and received. According to Brown, he requested a shower chair on September 20, 2016, was prescribed one on December 6, 2016, and received it toward the end of December 2016. (*Id.* at 5–6). He requested a back brace and leg brace in May 2017, was prescribed them in June 2017, and received them in July 2017. (*Id.*). Furthermore, he requested a wheelchair on September 20, 2016, was prescribed one on December 6, 2016, and received it on December 10, 2016. (*Id.*). Additionally, Brown stated that he received a walker in January 2017. (*Id.* at 6).

On March 8, 2018, Brown filed his Motion "Seeking Emergency Relief" (ECF No. 56) that contained another Prisoner Civil Rights Complaint on the Court's form. In his Motion, Brown requested injunctive relief to require the Wichita County Sheriff's Department to send him for a surgical evaluation with a neurologist, "to take him out of constant pain," and to stop cruel and

unusual punishment. (ECF No. 56 at 3). Brown stated that he was seen by physician Jessica L. Schultz ("Dr. Schulz") at the Neurology Center of Wichita Falls on August 1, 2017. (*Id.* at 1); (ECF No. 37 at 2). She found that he had a history of lumbar spine surgery secondary to fracture with recent reinjuries, constant low back pain, and hip pain. (ECF Nos. 58 at 1 and 37 at 2). Her recommended treatment was to "[c]onsider surgical evaluation." (ECF No. 58 at 2 and 37 at 3). On March 8, 2018, the Court issued its third questionnaire to Brown seeking clarification and additional information concerning his Motion. (ECF No. 60). In his response to the questionnaire, Brown stated that he has not been able to walk for two years and has received no treatment since he was seen by Dr. Schulz. (ECF No. 64). The Court issued its Findings, Conclusions, and Recommendation (ECF No. 77) recommending that Chief Judge Lynn deny Brown's Motion. Chief Judge Lynn accepted that Findings, Conclusions, and Recommendation on May 11, 2018. (ECF No. 82).

Brown filed two letters (ECF Nos. 79 and 80) on May 7, 2018, which the Court construed as a Motion to Stay. (ECF No. 85). The Court sent its fourth questionnaire to Brown on May 8, 2018, to clarify the legal and factual underpinnings of the Motion to Stay. (ECF No. 81). Brown responded to the questionnaire on May 29, 2018. (ECF No. 84). The Court denied Brown's Motion to Stay on May 30, 2018. (ECF No. 85).

On June 28, 2018, Brown supplemented his medical records with a medical order, initiated by SCMG and with Brown's authorization, for him to receive an MRI. Brown's MRI took place on May 9, 2018. (ECF No. 90). Dr. Ohman, Brown's primary care doctor at the Wichita County Jail, reviewed the MRI results. (*Id.*). Dr. Ohman's notes indicated that Brown previously had received an MRI on June 5, 2017 and characterized his current condition as "mild degenerative disc disease at L5-S1" with no interval change. (*Id.*).

## LEGAL STANDARD

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

**B.     Judicial Screening Standard**

A district court "shall dismiss" a case brought *in forma pauperis* "at any time if the court determines that . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). To aid the court in determining whether it should dismiss an *in forma pauperis* complaint, the United States Court of Appeals for the Fifth Circuit has approved the use of questionnaires and evidentiary hearings. *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). Responses to these questionnaires and hearings become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996). This is true even for Rule 12(b)(6) motions. *See id.* at 603 (concluding that on a Rule 12(b)(6) motion the relevant *Spears* hearing testimony remained part of the pleadings, even if superseded by an amended complaint). Accordingly, the Court has reviewed Plaintiff's Original Complaint (ECF No. 1), Amended Complaint (ECF No. 67), Verified Responses to the Court's Questionnaires (ECF Nos. 10, 12, 64, and 84), and Supplements (ECF Nos. 30, 37, 38, and 90).

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* However, if the court determines that the plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326–27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

## ANALYSIS

Title 42 U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment because its prohibition against cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Deliberate indifference to medical needs only amounts to an Eighth Amendment violation if the prisoner's needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–104). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

"Deliberate indifference is an extremely high standard to meet. . . . [T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Similarly, a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Id.* (citing *Easter v. Powell,* 467 F.3d 459, 464 (5th Cir. 2006)).

To prove an Eighth Amendment violation, a prisoner must (1) "prove objective exposure to a substantial risk of serious harm" and (2) "show that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46. Under the second, subjective prong, "a prison official acts with deliberate indifference 'only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

## C. Brown's General Allegations against Defendants do not Establish Deliberate Indifference.

Brown has not made sufficient factual allegations that would establish that the Defendants were deliberately indifferent to his serious medical needs. Although his allegations against Defendants are numerous, his general allegations are that Defendants failed to provide, or timely provide, him with assistive devices to mitigate symptoms from his degenerative disc disease and failed to provide him with prescribed and ongoing medical care or treatment including additional medical diagnosis such as an MRI, nerve conduction study, and surgical evaluation of his condition, all of which has caused him additional harm.

As to Defendant's failure to provide assistive devices, Brown's responses to his verified questionnaire show that he has received a shower chair, back brace, leg brace, wheelchair, and walker. (ECF No. 12 at 6). To the extent that Brown complains that he did not get assistive devices in a timely manner, "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (quoting *Easter,* 467 F.3d at 464). Here, Brown's responses show that Defendants neither ignored his complaints nor were they so untimely as to amount to deliberate indifference. He further fails to show that any of Defendants' actions resulted in substantial harm to him. *See Watts v. S. Health Partners*, No. 3:15-CV-1721-L-BK, 2015 WL

9

7566284, at *2 (N.D. Tex. Oct. 8, 2015) (holding that Plaintiff's allegation that he had not been examined by a doctor for over one year falls short of deliberate indifference), *adopted by*, No. 3:15-CV-1721-L, 2015 WL 7450544 (N.D. Tex. Nov. 24, 2015).

Brown alleges that the Defendants failed to provide him with medical care and treatment as prescribed by doctors at BMH and by Dr. Schultz. (ECF No. 10 at 3, 4, and 6; ECF No. 12 at 4; ECF No. 64 at 4). His evidence showing what medical care and treatments where "prescribed" are discharge instructions from BMH (ECF No. 30), and notes from Dr. Shultz concerning his nerve conduction study. (ECF No. 37). BMH's discharge instructions generally describe his condition, state that if pain is long-lasting then further tests "may" be ordered, and explain how his condition is "often" treated. (ECF No. 30). The discharge instructions do not actually prescribe medication or any specific medical treatments. Similarly, Dr. Schultz's recommended treatment was to "[c]onsider surgical evaluation." (ECF No. 37 at 3). Dr. Schultz did not, however, actually recommend surgical evaluation, only that it be considered, and did not order treatment of any kind.

Likewise, Brown's verified responses to questionnaires and supplements show that: (1) he received medication to treat his condition (ECF No. 12 at 3); (2) at least two MRIs were performed (June 6, 2017 and May 9, 2018) (ECF No. 90 at 9); (3) x-rays were administered (*id.* at 4); (4) a nerve conduction study was conducted by Dr. Shultz (ECF No. 37); and Dr. Ohman reviewed Brown's medical file to consider his ongoing medical needs. (ECF No. 90). Thus, Brown's verified answers and records demonstrate that Defendants were responsive to his requests for medical care and treatment to abate his condition. To the extent Brown may believe surgery is necessary to correct his mild degenerative disc disease versus being provided with prescription medication and assistive devices, disagreement with his course of treatment, without exceptional circumstances

10

that do not exist in the instant case, does not establish deliberate indifference. *Gobert*, 463 F.3d at 346.

D. **Brown's More Specific Allegations against Defendant Nurses do not Establish Deliberate Indifference.**

Brown's more specific allegations against the Defendant Nurses sound in negligence at most. Subpar treatment, administration of improper medication, and ignored complaints and sick calls, may be evidence of negligence, but not deliberate indifference because Brown does not allege facts showing the that Defendant Nurses intentionally treated him incorrectly or engaged in conduct demonstrating a wanton disregard of his serious medical needs. *Id.*; *see Stockwell v. Kanan*, 442 F. App'x 911, 914 (5th Cir. 2011) (per curiam) (explaining that a continuation of back pain, while unpleasant, is not a constitutional violation even when care is minimally deficient); *Morgan v. Tex. Dep't of Criminal Justice McConnell Unit*, 537 Fed. Appx. 502, 507 (5th Cir. 2013) (per curiam) (explaining that "[w]hile prescribing incorrect treatments or treatments that cause serious side effects might amount to malpractice, this allegation, without a further showing of deliberate indifference to serious medical needs, does not rise to the level of a constitutional violation").

E. **Brown's General Allegations against SCMG do dot Establish Deliberate Indifference.**

Brown alleged that SCMG is liable, in part, because it employed the Defendant Nurses who allegedly failed to comply with treatment prescribed by doctors from BMH. This claim is fatally defective because SCMG may not be held liable under § 1983 for supervisory liability. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under [section 1983] for an injury inflicted solely by its employees or agents."). Further still, "[a] supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements

11

unconstitutional policies that causally result in the constitutional injury." *Gates v. Texas Dept. of Protective & Regulatory Services*, 537 F.3d 404, 435 (5th Cir. 2008) (citing *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)). Brown has not alleged that SCMG affirmatively participated in any deliberate indifference, nor has he alleged any unconstitutional policy that SCMG implemented or followed that resulted in his alleged injury.

Brown's Complaint and his answers to the Court's questionnaire do not contain any allegations that would indicate that any of the named Defendants plausibly acted with deliberate indifference to his serious medical needs.

Normally, a *pro se* plaintiff, like Brown, is offered an opportunity to amend his complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). But where plaintiff has, through Court-issued questionnaires, the opportunity to state his best case, then the Court may dismiss his claims with prejudice. *Nixon v. Abbott*, 589 Fed. Appx. 279, 279 (5th Cir. 2015) (per curiam). Here, Brown has amended his complaint and responded to four questionnaires to overcome deficiencies identified by the Court. Under these circumstances, the undersigned concludes that Brown has stated his best case, and his claims should be dismissed with prejudice.

Also before the Court is Brown's renewed Motion for Temporary Restraining Order (ECF No. 95) filed on August 23, 2018. Because the undersigned is recommending that Chief Judge Lynn grant Defendants' Motion to Dismiss (ECF No. 76) and dismiss Brown's claims with prejudice, the undersigned also recommends that Chief Judge Lynn deny Plaintiff's Motion for Temporary Restraining Order (ECF No. 95) as moot.

## CONCLUSION

After considering the pleadings and the applicable law, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M.G. Lynn **GRANT** Defendants' Amended and Joint Rule 12(b)(6) Motion to Dismiss and Brief in Support (ECF No. 76) and **DISMISS** Plaintiff's Amended Complaint (ECF No. 67) **with prejudice** and **DENY AS MOOT** Plaintiff's second Motion for Temporary Restraining Order (ECF No. 95).

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed September 25, 2018.

                                                   _____
                                                   Hal R. Ray, Jr.
                                                   UNITED STATES MAGISTRATE JUDGE